Tracy SIDLE, Plaintiff-Appellant,

v.

William C. MAJORS, Defendant-Appellee.

No. 74–1746.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1975.

Decided June 1, 1976.

Theodore Lockyear, Evansville, Ind., for plaintiff-appellant.

Robert H. Hahn, Rodney H. Grove, Evansville, Ind., for defendant-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

In December 1973, plaintiff, a citizen of North Carolina, filed this diversity action against defendant, an Indiana citizen. Plaintiff alleged that at 11:00 p. m. on November 18, 1972, she was an invited passenger in an Opel automobile being driven by defendant on Hart Street Road, three miles south of Vincennes, Indiana. According to Count I of the complaint, the defendant negligently failed to keep his vehicle under control and therefore was unable to negotiate a sharp left curve and drove his car into a telephone pole, causing plaintiff severe injuries; she sought $65,000 in damages. Count II of the complaint alleged that defendant's behavior constituted wanton or wilful misconduct.

In May 1974, the district court entered findings of fact and conclusions of law holding that the 1929 Indiana guest statute, as amended (Ind.Code § 9–3–3–1 (Burns 1973)),[1] required that summary judgment

---

1. The Indiana guest statute provides:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for·loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or

be entered against plaintiff on Count I.[2] Count II, based on defendant's wanton or wilful misconduct, has not yet been tried.

Both in the district court and on appeal, plaintiff challenged the constitutionality of the Indiana Guest Act under Article 1, §§ 12 and 23 of the Indiana Constitution[3] and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Because the Indiana Supreme Court had not passed on the constitutionality of the statute under the Indiana Constitution, after hearing oral argument we certified the following questions to the Indiana Supreme Court in April 1975 pursuant to Rule 15N of the Indiana Rules of Appellate Procedure:

"1. Does the Indiana Guest Statute contravene Article 1, Section 12 of the Indiana Constitution?

"2. Does said Act contravene Article 1, Section 23 of the Indiana Constitution?"

In an opinion received by us on April 8, 1976, that court answered both certified questions in the negative. 341 N.E.2d 763. Consequently, we need only consider whether the Indiana guest statute violates the Equal Protection Clause of the Fourteenth Amendment.[4]

 The statute challenged here discriminates against guests by denying them the right to sue for negligently inflicted bodily injury while affording that right to all non-guest passengers. Because the statutory classification is not inherently suspect

(cf. *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910) and does not impinge upon fundamental rights (cf. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306), we need not strictly scrutinize the state purposes sought to be served. In the realm of social and economic regulation, the states are free to experiment and are given great latitude in determining who shall benefit from a particular enactment. *Levy v. Louisiana,* 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436, 439; *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501. Nonetheless, statutory classifications violate the Equal Protection Clause if they are not rationally related to "some legitimate, articulated state purpose." *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282, 288; *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777.

In its opinion responding to our certification, the Indiana Supreme Court stated that the purpose of this statute was to foster "hospitality by insulating generous drivers from lawsuits instituted by ungrateful guests and the elimination of possibility of collusive lawsuits." 341 N.E.2d at 768. However, as noted in *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973), where the California guest statute was held unconstitutional under the Fourteenth Amendment, widespread liability insurance has eliminated any notion of ingratitude that may have formerly adhered to a suit by a guest against his host. 106

death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

**2.** Although summary judgment was only entered for defendant on Count I, the district court certified that there was no just reason for delay and entered final judgment on that count pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**3.** Article 1, § 12, of the Indiana Constitution provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely,

and without purchase; completely, and without denial; speedily, and without delay."
Article 1, § 23 of the Indiana Constitution provides:

"*Privileges equal.* The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

**4.** The plaintiff argued preliminarily that since she was invited to ride by defendant, she was not a guest within the meaning of the Indiana statute. Since it is now settled that an invited automobile passenger is a guest under the Indiana Act, this argument must fail. See *Sidle v. Majors,* 341 N.E.2d 763, 774 (Ind.1976).

Cal.Rptr. 397–398, 506 P.2d 221–222. 80 to 85% of Indiana residents carry liability insurance (United States Department of Transportation, *Driver Behavior and Accident Involvement: Implications for Tort Liability,* at 205 (1970)), whereas only 20% of all Americans were insured at the time of the passage of most of the guest statutes. Ellsberre and Roberts, *Compulsory Insurance Against Motor Vehicle Accidents,* 76 U.Pa.L.Rev. 690, 691 (1928). Indiana automobile owners have also had the benefit of a compulsory Financial Responsibility Law since 1947 (Ind.Code § 9–2–1–15 (Burns 1973)).

*Brown* also punctured the so-called anti-collusion purpose of a guest statute, for the guest and host can escape the bar of the statute by colluding on the issue of whether the rider provided any compensation for the ride (106 Cal.Rptr. 402–403, 506 P.2d 226–227) or whether the host was guilty of wilful or wanton misconduct. Such odious perjury, often difficult to disprove, is encouraged by guest statutes. Nor is vexatious litigation avoided, for complaints are readily drafted to meet the statutory requirements. Thus we agree with the California Supreme Court in *Brown* (106 Cal. Rptr. 401–403, 506 P.2d 225–227) that the relationship between the legitimate goal, the prevention of fraudulent actions, and the remedy, denying guests the right to sue, is so attenuated that it is unreasonable to eliminate causes of action of an entire class of persons merely because an indefinite portion of a designated class may file fraudulent lawsuits. See *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 655–657, 94 S.Ct. 791, 803–04, 39 L.Ed.2d 52, 68–70 (Powell, J. concurring).

One further reason the Indiana Supreme Court advanced in favor of the constitutionality of the guest statute was that otherwise there might be an escalation of automobile liability insurance premiums. But when the Guest Act was enacted in Con-

necticut in 1927, there was no reduction in automobile premiums, nor was there an increase in the premiums when that statute was repealed ten years later. Note, 42 U.Cinn.L.Rev. 709, 721 (1972). Defendant has not demonstrated that our invalidation of this statute would increase premiums for such insurance.[5]

■ Although we consider the foregoing considerations to be persuasive that this guest statute contravenes the Equal Protection Clause, under decisions of the Supreme Court of the United States we are required to affirm the judgment below.

Defendant's chief reliance is upon a 1929 Supreme Court decision where, without much discussion, the Court held that a similar Connecticut statute did not contravene the Equal Protection Clause. *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221. However, the rule of that case has been so eroded by subsequent decisions (see, *e. g., Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63) that it should no longer control under the Equal Protection Clause. *Silver* focused on whether the Connecticut statute could properly apply to motor vehicles as distinguished from other forms of transportation. The opinion did not consider whether the statute discriminated against a class of plaintiffs (280 U.S. at 123, 50 S.Ct. at 58, 74 L.Ed. at 225) and is therefore distinguishable.

As with the Indiana decision here, the *Silver* ruling relies on the notion that it is unfair to impose liability on the host and the fear that the courts will be inundated with troublesome lawsuits. At that time two factors supported the Supreme Court's decision to defer to the legislature's judgment on these questions. Widespread automobile use was still new and society needed time to develop methods of assessing the cost of the inevitable injuries. When the guest statutes are viewed as an initial attempt to cope with the problem, it was entirely proper for the Court to let the

---

**5.** See *Manistee Bank & Trust Co. v. McGowan,* 394 Mich. 655, 232 N.W.2d 636, 645, n. 59 (1975). In note 9 of that opinion, the Michigan Supreme Court has collected an impressive ar- ray of critical comments with respect to guest statutes. For further such antipathy, see *Brown v. Merlo, supra,* 106 Cal.Rptr. at 408, 506 P.2d at 232, n. 22.

legislature make the decision. However, that is no longer the case. Liability insurance is a means by which the cost is borne by motorists as a class, not the individual driver. Further, experience teaches us that no fewer suits are filed by virtue of such statutes. The premises of *Silver v. Silver* being no longer valid in the light of modern authority, we believe that on plenary review the Supreme Court would not hold that *Silver* controls the question before us. See *Brown v. Board of Education,* 347 U.S. 483, 493–494, 74 S.Ct. 686, 691, 98 L.Ed. 873, 880.

Subsequent to *Silver,* appellate courts of eight states have declared their respective guest statutes unconstitutional under the federal Equal Protection Clause: [6] *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212 (1973); *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974); *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974); [7] *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Primes v. Tyler,* 43 Ohio St.2d 195, 331 N.E.2d 723 (1975); *Laakonen v. Eighth Judicial District Court,* 538 P.2d 574 (Nev. 1975); *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975); *Manistee Bank & Trust Co. v. McGowan,* 394 Mich. 655, 232 N.W.2d 636 (1975). Their persuasive reasoning reinforces our belief that *Silver* is no longer to be followed.[8]

Guest statutes were enacted during depression years to help the prevailing economic plight of the insurance companies that lobbied for their passage.[9] No such justification presently exists. Counsel for plaintiff has put it picturesquely: they are "an anachronistic monument to the insurance industry" (Br. 30). Today virtually only insurance companies win protection under such statutes.

The rationale that a guest statute favors hospitality falls here where plaintiff argues that she favored defendant, rather than vice versa, by agreeing to furnish him company as his passenger. The fact that she did not pay defendant is of no critical significance, for if Majors had injured a pedestrian or a guest in another's car, he would be liable for simple negligence. The hospitality rationale is also indefensible when contrasted with the judicial abrogation of interspousal, charitable and governmental immunities in order to provide a remedy for negligently injured persons.

Finally, the statute's lack of a rational basis is demonstrated by its denying automobile guest passengers the right to sue their drivers for negligently caused bodily injuries while permitting them to recover for negligently damaged personal effects. Such a statute denies them protection from negligent injuries. We can find no necessary rational relation to a legitimate state interest (*Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 253–54, 30 L.Ed.2d 225, 229) that would require us to sustain the legislation.

Nevertheless a recent Supreme Court decision requires us to reach a contrary result. In *Cannon v. Oviatt, supra,* the Supreme Court of Utah rejected an equal protection challenge to a guest statute virtually identical to Indiana's. The appeal to the United States Supreme Court presented the question whether the guest statute violated the equal protection clause because it barred recovery for ordinary negligence. See 43

---

**6.** Likewise, various courts have refused to apply other states' guest statutes. See the cases and authorities collected in Supplement to 2 Harper and James, the Law of Torts 47–48.

**7.** The *Johnson* decision was based on three provisions of the North Dakota Constitution, one of which resembles the federal Equal Protection Clause.

**8.** The state courts have not been unanimous. Recently the Supreme Courts of seven states have upheld their guest statutes despite challenges on equal protection grounds. *Behrns v.*

*Burke,* 229 N.W.2d 86 (S.D.1975); *Richardson v. Hansen,* 527 P.2d 536 (Colo.1974); *Duerst v. Limbocker,* 269 Or. 252, 525 P.2d 99 (1974); *Cannon v. Oviatt,* 520 P.2d 883 (Utah 1974), appeal dismissed for want of a substantial federal question, 419 U.S. 810, 95 S.Ct. 24, 42 L.Ed.2d 37; *Keasling v. Thompson,* 217 N.W.2d 687 (Iowa 1974); *Justice v. Gatchell,* 325 A.2d 97 (Del.1974); *Delany v. Badame,* 49 Ill.2d 168, 274 N.E.2d 353 (1971).

**9.** *Brown v. Merlo, supra,* 106 Cal.Rptr. 401, 506 P.2d 225.

L.W. 3103. The Court dismissed the appeal for want of a substantial federal question. *Cannon v. Oviatt,* 419 U.S. 810, 95 S.Ct. 24, 42 L.Ed.2d 37. Although that ruling is not a plenary consideration of this significant current topic in tort law, it is an adjudication on the merits. *Hicks v. Miranda,* 422 U.S. 332, 344–345, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223, 236. Therefore, despite our doubts about the current validity of the rule in *Silver v. Silver, supra,* we are obligated to affirm. *Hicks v. Miranda, supra,* 422 U.S. at 345, 95 S.Ct. at 2290, 45 L.Ed.2d at 236.

Although we are the first court of appeals to consider the equal protection challenge to a guest statute, the high courts of several states have already grappled with the problem, and the split among them has been noted (*supra* p. 1159). Indeed the Supreme Courts of Nevada and New Mexico invalidated their states' guest statutes after the Supreme Court of the United States acted in *Cannon.* See *Laakonen v. Eighth Judicial District Court, supra; McGeehan v. Bunch, supra.* The frequency with which the question has arisen and the disagreement among the courts attest to the importance of the issue, its difficulty and the need for conclusive resolution so that the present viability of *Silver v. Silver* can be authoritatively determined.

Judgment affirmed.

FAIRCHILD, Chief Judge (concurring).

As a matter of social policy, I have long rejected the propositions which underlie an automobile guest statute of the type we are now considering. See *McConville v. State Farm Mutual Automobile Insurance Co.,* 15 Wis.2d 374, 113 N.W.2d 14 (1962) (written by me as Justice of the Supreme Court of Wisconsin and changing a judge-made rule of law). I am, therefore, in agreement with the majority's criticism of the stated purposes of the guest statute. However, while I disagree with the choice of policy made by the Indiana Legislature in adopting this statute, I am unable to conclude that the reasons for enacting it are not rationally related to the classifications which the stat-

ute creates. A court is required to presume that the grounds for enacting legislation are rational, and I cannot state with the necessary certainty that in this instance the presumption has been overcome.